1

```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION

MARYAM ALRAZZAQ,                    )
                                    )
            Plaintiff,              )
                                    )
      vs.                           )   No. 12 C 7560
                                    )
WALGREEN COMPANY, Administrator,    )
d/b/a Walgreen Pharmacy Services    )
Eastern,                            )   Chicago, Illinois
                                    )   July 10, 2014
            Defendant.              )   9:58 o'clock a.m.


                    TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE MANISH S. SHAH


APPEARANCES:

For the Plaintiff:       LAW OFFICE OF JOHN S. BISHOF, P.C.
                         BY:  MR. JOHN S. BISHOF, JR.
                         101 North Wacker Drive, Suite 200
                         Chicago, Illinois  60606
                         (312) 630-2048

For the Defendant:       BRYAN CAVE
                         BY:  MR. WILLIAM J. WORTEL
                         161 North Clark Street, Suite 4300
                         Chicago, Illinois  60601-3206
                         (312) 602-5105










                 COLLEEN M. CONWAY, CSR, RMR, CRR
                       Official Court Reporter
                219 South Dearborn Street, Room 1714
                       Chicago, Illinois  60604
                            (312) 435-5594
                 colleen_conway@ilnd.uscourts.gov
```

1           (Proceedings heard in open court:)
2           THE CLERK:  12 C 7560, Alrazzaq versus Walgreen
3   Company.
4           MR. BISHOF:  Good morning, Your Honor.
5           John Bishof on behalf of the plaintiff.
6           MR. WORTEL:  Good morning, Your Honor.
7           Bill Wortel on behalf of the defendant.
8           THE COURT:  Good morning.
9           I have your status report and I have the motion to
10  compel.  And there are a few moving parts that I have seen from
11  the status report, so why don't we first get a little bit of an
12  update.
13          Let me ask the defense counsel first, in terms of any
14  supplement that has occurred, what's your current position
15  about what you really need on the damages front?
16          MR. WORTEL:  Your Honor, we did receive a number of
17  e-mails from plaintiff a couple days ago.  Looking at page 8 of
18  defendant's memorandum, which kind of bullet-points what we
19  don't have, six of the nine items were still outstanding.  I
20  can address those or --
21          THE COURT:  Well, let me ask the plaintiff, what's
22  your position about supplementing some of this information?
23          MR. BISHOF:  If it's something my client has, I would
24  certainly give it to counsel, as long as it's not something
25  that's work-product or attorney-client privileged, but -- and

1  she received the same letter that I received April 3rd, and I
2  said, "Give me all the stuff," and then she gave me 80 e-mails
3  with attachments. So quickly going through them, I thought it
4  -- she covered our bases.
5        THE COURT: Did you get the returns, the 2013 tax
6  returns?
7        MR. WORTEL: No, Your Honor.
8        THE COURT: And has the defense issued any subpoenas
9  to third parties like MedScripts Illinois, L.L.C.?
10       MR. WORTEL: Not yet, Your Honor.
11       THE COURT: On the issue of front and back pay, I do
12 think there is some material that the plaintiff ought to be
13 providing to the defense to see the lay of the land on that
14 issue. I am not so sure it's a good idea to spend a lot of
15 effort thinking about a motion for summary judgment on this
16 issue of a potential equitable remedy that really may not be
17 necessary to deal with in a summary-judgment-type phase.
18       But in any event, I think the two of you still have
19 some work to do on the motion to compel and
20 meeting-and-conferring on it, because I think -- what I am
21 hearing today is that the plaintiff is willing to provide you
22 some additional information, and that he's working on it.
23       What I will do is I am going to deny the motion to
24 compel, but I am going to direct the plaintiff to continue to
25 confer with defense counsel over the outstanding items on the

1  bullet list and try and get some updated material to the
2  defense.
3      I think the defense may very well be directing
4  subpoenas to MedScript Illinois, which is a separate entity,
5  and might be subject to receiving process and might have
6  documents as well.
7      And so I think discovery remains open on this issue
8  of damages, so you can continue down that road. And if you
9  have another problem, then come in and see me again, and we can
10 hash it out then.
11     MR. WORTEL:  Okay, Your Honor.  My guess is that it
12 is denied without prejudice, then?  I mean --
13     THE COURT:  It is denied without prejudice.
14     MR. WORTEL:  Okay, okay.  I guess I -- depending on
15 how the schedule works out, I guess it's going to depend,
16 because I -- we were really up against the wall here and --
17     THE COURT:  Right.
18     MR. WORTEL:  -- we need things like her tax returns,
19 but --
20     THE COURT:  Right.  There is really no reason she
21 shouldn't be able to provide her tax returns to the defense.
22     MR. BISHOF:  Are you --
23     THE COURT:  Her individual 2013 federal and state tax
24 returns.
25     MR. BISHOF:  You don't have that?

1           MR. WORTEL:  No, I don't have it.
2           MR. BISHOF:  Okay.  Well, if she's filed them, I'll
3    get them to him.
4           THE COURT:  Right.  So I appreciate that there is a
5    deadline and schedules, and we're going to talk about that, but
6    we're going to keep several of them in place, which is going to
7    require the plaintiff to continue to cooperate with the defense
8    in getting this case ready to move forward.
9           So I think those natural forces will help resolve
10   some of these -- this discovery issue, at least I am hopeful.
11   And if I am wrong about that, you can come back and tell me
12   that I was wrong about that, and --
13          MR. WORTEL:  I'm sorry.  Which date was -- you're
14   going to stay in place?
15          THE COURT:  Let's talk about that.
16          MR. WORTEL:  Okay.
17          THE COURT:  So you have a trial date of November
18   17th?  Is that --
19          MR. WORTEL:  Yes, Your Honor.
20          THE COURT:  That trial date is fine with me, so I
21   want to keep that trial date in place.
22          I don't think you need to do a pretrial order by
23   August 5th in light of a mid-November trial.  So let's work
24   backwards from the November 17th trial.
25          In terms of what's left in the case, and the

potential motions *in limine* and the like, my thought is that we could have a pretrial conference two weeks before trial.

THE CLERK: November 3rd.

THE COURT: And let's do the pretrial conference in the afternoon, at 2:00 o'clock.

Then for the pretrial conference, I will want a proposed pretrial order three weeks before the pretrial conference.

THE CLERK: October 13th.

MR. WORTEL: Thanks, Your Honor. That should --

THE COURT: So I think --

MR. WORTEL: -- definitely build in --

THE COURT: -- that gives you a little bit more breathing room to kind of work out this discovery.

And, again, I want you to focus on what really is necessary to assess your front pay or back pay issues. And the mitigation of damages question also seems to me a little bit of a lower priority in light of what you might learn about her financial situation, so --

MR. WORTEL: Understood, Your Honor. You're right, that's -- sure.

THE COURT: Okay.

MR. BISHOF: There is another issue, Your Honor.

I submitted supplemental interrogatories and production requests to counsel because of a memo that had been

```
 1    sent to my --
 2              THE COURT:  This is the immunization audit?
 3              MR. BISHOF:  Yes, Your Honor.
 4              THE COURT:  All right.
 5              MR. BISHOF:  And I know that counsel is going to
 6    object to that, and we may have to have a briefing schedule on
 7    that, whether or not it is a protected document.
 8              THE COURT:  Safety -- right.  Let me ask the
 9    defendant first, is there any overlap in the decision-makers in
10    the plaintiff's employment issues and the decision-makers
11    involved in the immunization audit?
12              MR. WORTEL:  I don't know, Your Honor.  The
13    district is within the Midwest, so it's possible that the
14    pharmacy supervisors over that district -- that some of his
15    pharmacists may be in there, but this is all -- again, it
16    encompasses a period nine months after plaintiff was already
17    gone, and we've already produced for the two-year period prior
18    to her termination all disciplinary records relating to the
19    pharmacists and -- like over 20 people.
20              THE COURT:  Right.
21              MR. WORTEL:  So --
22              THE COURT:  I think I understand the dispute, and
23    I'll -- you still probably need to work with each other about
24    the scope of what is out there.  I think you might need to look
25    at it a little bit more before you can say outright absolutely,
```

1   there's nothing here that's remotely relevant.

2               I appreciate that it's after she left, but if there
3   is some overlap in decision-makers -- there is a potential that
4   one of the people involved in the audit and how they conducted
5   it might be relevant to how they acted a year earlier.  It
6   might be.  I am not pre-judging it.  But I also want to suggest
7   to the plaintiff that I am not so sure this audit is worth
8   going down a rabbit hole given its temporal disconnect from
9   really the heart of the issue in your case.

10              But those are just advisory comments.  You can work
11  that out amongst yourselves.  And if there is a problem, then
12  I'll see you.  But, you know, you have asked for a settlement
13  conference, you have tried mediation, and now you're having a
14  discovery fight, so I -- let me end by asking you, what's
15  really going on here?  And how can we help?

16              MR. WORTEL:  Your Honor --

17              THE COURT:  Let me start with the plaintiff.

18              MR. BISHOF:  Good.  I'm pretty skeptical of any
19  possibility of settling the case, the way the mediation turned
20  out.  Counsel was gracious to start the process in getting this
21  pre- -- this initial status report going, so -- and then he
22  made a note about, "I'm game if you're game," to go to the
23  magistrate judge to see if we can resolve this.  And I said,
24  "Well, with my skepticism, if you think so, let's do it."
25  That's pretty much it.

1  MR. WORTEL: Yeah. Your Honor, you know, it's
2  defendant's position we've offered a bracket that is well
3  within full recovery, that the -- there is no back pay or front
4  pay. The emotional distress claim is someone who never sought
5  any treatment, no serious physical problems, wanted to hug her
6  supervisor after she was terminated because she did not want to
7  be a pharmacist ever again. There's no basis for punitive
8  damages under *Kolstad*, the Supreme Court decision.
9  We've provided all kinds of authority on that. We --
10 I understand that counsel just says he disagrees, but we're not
11 getting authority back that is not completely distinguishable.
12 You know, this is a case that should be settled, but
13 if they want more than a hundred cents on the dollar, you know,
14 Walgreen's isn't going to do it, so --
15 MR. BISHOF: But, Your Honor --
16 THE COURT: In light of plaintiff's counsel's
17 skepticism about a settlement, I am a little reluctant to send
18 you to the magistrate in that posture.
19 MR. WORTEL: It would be my hope, Your Honor, that
20 plaintiff and counsel hearing from the magistrate judge the
21 opinions about the availability of some of these damages and
22 what the Seventh Circuit has upheld, and on the back pay/front
23 pay, as opposed to a private mediator, which I just don't
24 believe counsel, you know, trusts it -- or I'm just
25 speculating. And I -- we had an agreement to reconvene and

1   then plaintiff set a bracket and set as a condition of
2   reconvening -- and the bracket was, again, what we considered
3   more than full relief, so that's why it ended.
4          If counsel's not interested in sitting down with
5   Magistrate Judge Kim -- I have had, you know, a settlement
6   conference with Magistrate Judge Kim. I think he's very
7   effective. I think that it would be helpful for counsel and
8   his client to hear what Judge Kim has to say about these
9   issues. But if he's not -- you know, we're not going to twist
10  their arm. I mean, I -- in our view, this is not a case that
11  should be tried just because the amount of damages at issue is
12  just not there, but --
13         THE COURT: What do you think about that?
14         MR. BISHOF: My skepticism comes from the fact that
15  counsel ignored the fact that I gave him a case where a
16  pregnant woman, just based on anxiety, got $245,000
17  noncompensatory damages. I gave him another case where back
18  pay was a hundred forty thousand dollars. I gave him a case
19  where there was attorneys' fees given, too. So I did give him
20  these cases and he chooses not to acknowledge that I gave him
21  these cases.
22         THE COURT: Well, and I think his response is a
23  little bit more tied to the facts and circumstances of your
24  client's departure and subsequent apparent success in her
25  chosen field.

So let's do this. You should be working on some of this discovery on this damages question, and that might change both the defense and the plaintiff's view about what the lay of the land is in assessing the value of the case. So keep going down that road before I send you to Magistrate Judge Kim, because I think I would prefer that plaintiff's counsel be a little bit more enamored at the prospect of a settlement conference before I ask Judge Kim to take his time with you.

And I agree with you, and let me tell plaintiff's counsel, Judge Kim is great and he can work really hard with the parties and achieve something that even if you're skeptical at first, he could get it done.

So I will urge plaintiff's counsel to keep an open mind about it and think about it. Give the defense some of this additional financial information, and let's see you in about four or five weeks.

THE CLERK: August 14th at 9:30, does that work for you gentlemen?

MR. BISHOF: I am going to be out of town.

THE CLERK: Do you want to come in the week before or the week after?

MR. BISHOF: The week after is good.

THE CLERK: Okay. Great. How does the 21st look for both of you at 9:30?

MR. BISHOF: I got a case management in at 9:30. All

```
 1    the other days of that week are fine.
 2              THE CLERK:  Okay.  The 20th?
 3              MR. BISHOF:  August 20th?
 4              THE CLERK:  Yeah, at 9:30.
 5              MR. WORTEL:  Okay.  That works, Your Honor.
 6              THE COURT:  Okay.  See you then.
 7              MR. BISHOF:  Thank you, Your Honor.
 8              THE COURT:  Keep working together, please.
 9              MR. WORTEL:  We actually get along really well.
10              THE COURT:  I'm sure you do, so --
11              MR. WORTEL:  It's not -- this is not one of those
12    types of cases.  We just disagree on a lot of the law and the
13    facts, but we get along well.
14              MR. BISHOF:  I don't understand why he's so wrong.
15              MR. WORTEL:  This is the first time we've been in on
16    a discovery issue.
17          (Proceedings concluded.)
```

```
 1                    C E R T I F I C A T E
 2
 3
 4
 5          I, Colleen M. Conway, do hereby certify that the
 6   foregoing is a complete, true, and accurate transcript of the
 7   proceedings had in the above-entitled case before the
 8   HONORABLE MANISH S. SHAH, one of the Judges of said Court, at
 9   Chicago, Illinois, on July 10, 2014.
10
11
12         /s/ Colleen M. Conway, CSR,RMR,CRR         07/14/14
13              Official Court Reporter                 Date
                United States District Court
14             Northern District of Illinois
                      Eastern Division
15
16
17
18
19
20
21
22
23
24
25
```

Colleen M. Conway, Official Court Reporter